IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT **keithbe00@gmail.com** THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 1:26-mj- 30-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler Delorme, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with **keithbe00@gmail.com** that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigations and have been since July 2017. From December 2017 – August 2023, I was assigned to the Organized Crime Task Force of the FBI's Boston Division. I have received extensive training in narcotics

enforcement, computer crimes, crimes against children and organized crime investigations, including the following: twenty-one (21) weeks of basic training at the FBI Academy in Quantico, Virginia, which included approximately three weeks of training related to organized crime and drug investigations, financial crimes and money laundering; and numerous hours of on-the-job training in various violent crimes.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 875(c) (Interstate communication containing a threat to injure the person of another) have been committed by Keith Bergstrom. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. On December 22, 2025, the FBI was contacted by United States Department of Agriculture (USDA) regarding threats that were made to a USDA Special Agent they received on December 20, 2025, from Keith BERGSTROM (hereinafter, "BERGSTROM"), a 40-year-old male who, at the time, was located near the Mojave Desert at or near the borders of California, Nevada, and Arizona.

7. BERGSTROM is a former employee of the USDA. He was fired for cause and has been acting out against the agency ever since. BERGSTROM had three orders of protection taken out against him by employees of the USDA. The victim in the case, "T.B.," was the OIG investigator assigned to BERGSTROM's case. BERGSTROM appears to blame T.B. for, among other things, blocking BERGSTROM's emails.

8. On or about December 19, 2025, BERGSTROM sent out several threatening emails from his email address, keithbe00@gmail.com, to several media outlets, law enforcement departments and several USDA employees.

9. Based on facts alleged in the body of the emails, including those related to his work history at USDA, and a screenshot of an email from a USDA employee to a "Mr. Bergstrom," I believe that the author of these emails and owner/operator of the email address is in fact BERGSTROM.

10. Additionally, information from Google for the subscriber information associated with keithbe00@gmail.com showed that the email was subscribed to a Keith Bergstrom.

11. These are some of the emails that were sent:

*"[T.B.] OYG investigator in Salem, New Hampshire is going to fucking die for blocking my fucking emails and having me fucked with every fucking state I go to and ignoring fucking crimes that he is sworn to fucking do something about"*

*"I'm not figuratively talking about ripping your throat out booty. I am talking about punching you in the face until you are a bloody pulp dead not breathing laying there lifeless I am going to beat the fucking daylights out of you until you are no longer breathing you fucking piece of shit."*

*"You can't look the other way when I'm making fucking threats against the fucking government official you can't look the other way when I'm making fucking death threats against a law-enforcement person you're just going to look the other way you can't be that much of Fucking coward fucking lock me up for saying I'm going to kill this piece of shit…You blocking my emails to the fucking media… This is one way to find out, arrest me for saying I'm going to kill this piece of shit and if you don't and I actually fucking do it then it's definitely on you"*

*"Jesus Jesus Christ, if you fucking coward pieces of shit, don't arrest me for outright fucking telling you that I am going to fucking kill [T.B.] then what the fuck are you doing?"*

*"I have a week left at this campground. It takes me 2 1/2 days three days to get back to New Hampshire and I'm going to kill [T.B.]"*

*"When I get back to New Hampshire, I'll punch investigator Todd Bucci in the face if that's what it takes to get my day in court, so be it.*

12. These and other emails indicated that BERGSTROM not only planned to seriously injure or kill T.B., but that he planned to travel to New Hampshire to do so.

13. Additional emails included statements wherein BERGSTROM stated that he intends to obtain his rifle that he stated was either in the possession of his sister or New Hampshire State Police:

" *In accordance with Virginia state law, the New Hampshire State police took my rifle…I don't even think in New Hampshire that I had surrender my rifle for any reason, I should've put a more of a fight. I am coming back to New Hampshire, and unless you make stricter gun control laws there's nothing preventing me from owning my rifle.*"

14. T.B. is concerned about the safety of himself, his family, and also the safety of other USDA employees. BERGSTROM was involuntarily committed to the hospital in January 2025. He was released the next day and allowed to return home. BERGSTROM blames T.B. and the Manchester police department for him being involuntarily committed and this has added towards his anger towards T.B.

15. These emails were sent to T.B.'s work email address. T.B.'s primary work office is in Salem, New Hampshire. The emails were also sent to email addresses associated with the New Hampshire Attorney General's Office, the New Hampshire Governor's Office, the New Hampshire State Police, WMUR, and the Rockingham New Hampshire County Attorney.

16. A preservation request was sent to Google for Bergstrom's email keithbe00@gmail.com on December 29, 2025.

17. BERGSTROM was arrested in Arizona on or about December 24, 2025, pursuant to a criminal complaint filed in the District of New Hampshire (25-mj-264-01-AJ).

## BACKGROUND CONCERNING GOOGLE[1]

18. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

19. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

20. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

21. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

22. Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

23. Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

24. Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

25. Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a

history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

26. Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity. My Activity also collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account, including queries made to Google Gemini, "personal AI assistant," voice queries made to the Google artificial intelligence-powered virtual assistant Google Assistant or commands made to Google Home products. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, ads clicked, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google Assistant and Google Home voice queries and commands may also be associated with the account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts in to automatic deletion every three or eighteen months. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

27. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

28. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

29. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of

service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

30. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

31. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

32. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

33. [[**Include this paragraph if relevant; add specific facts relating to the need to identify or locate the targets of the investigation, or to establish attribution**]] In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a

residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

34. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

35. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

36. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my

training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

37. Based on the forgoing, I request that the Court issue the proposed search warrant.

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

/s/ Tyler Delorme
Tyler Delorme
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to by telephone on February 12, 2026.

Hon. Andrea K. Johnstone
United States Magistrate Judge
**Feb 12, 2026**

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with keithbe00@gmail.com ("the Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by Google LLC ("Google")

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on December 29, 2025, request number 120046566, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from December 18, 2025 to December 24, 2025, unless otherwise indicated:

a. All business records and subscriber information, in any form kept, pertaining to the Account, including:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);
3. Telephone numbers, including SMS recovery and alternate sign-in numbers;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;
5. Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers
6. Length of service (including start date and creation IP) and types of service utilized;
7. Means and source of payment (including any credit card or bank account number); and

8. Change history.

b. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c. Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

d. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails.

e. Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history.

f. All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history.

g. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Gemini, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

Google is hereby ordered to disclose the above information to the government within **10** days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes**:** fruits, contraband, evidence, and/or instrumentalities of violations of 18 U.S.C. § 875(c) (Interstate communication of threats to injure person of another), those violations involving Keith BERGSTROM and occurring after December 18, 2025, including, for each Account or identifier listed on Attachment A, information pertaining to the following matters:

a. Communications of threats; planning to carry out threats or attacks; possession of firearms; planning to travel to New Hampshire, searching for locations of victims of threats;

b. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

c. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

d. The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.